UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MICHAEL G. CAMPBELL,
Plaintiff

V.

HALLSMITH-SYSCO FOOD SERVICES,
INC.,
Defendant

CIVIL ACTION NO. _____

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§1332, 1441 and 1446, the defendant, Hallsmith-Sysco Food

Services ("Hallsmith-Sysco"), removes this action to the United States District Court for the

District of Massachusetts. The grounds for removal are as follows:

1.    On or about November 22, 2004, the plaintiff, Michael Campbell, filed this

employment discrimination action in the Bristol Superior Court, Civil Action No. 04-01300.

2.    On or about February 20, 2005, Mr. Campbell served upon counsel for Hallsmith-

Sysco a Summons and Complaint. (A true copy of the Summons and Complaint served are

attached as Exhibit A).

3.    Accordingly, this notice of removal is being filed within the time period required

by law, 28 U.S.C. §1446(b).

4.    The plaintiff, Mr. Campbell, is a resident of Rhode Island. (Complaint ¶2). The

named defendant, Hallsmith-Sysco, is a limited liability company organized under the laws of

Massachusetts with a principal place of business in the Commonwealth at 380 South Worcester

Street, Norton, Massachusetts.

5.    In his Complaint, the plaintiff seeks recovery for alleged sexual harassment and hostile work environment. He has demanded judgment for (quote his types of damages from Complaint and Cover Sheet). He has filed a Civil Action Cover Sheet with the Bristol Superior Court in which he asserts that his damages are "in excess of $25,000" and if successful may recover attorneys' fees. See Exhibit A. While Hallsmith-Sysco denies any liability for the claims asserted by the plaintiff, the amount of the matter in controversy may exceed $75,000.00.

6.    Because the amount in controversy in this case may exceed the sum or value of $75,000.00 and is between citizens of different states, as set forth in 28 U.S.C. §1332, this case is subject to removal under 28 U.S.C. §1441(a).

                                    HALLSMITH-SYSCO FOOD SERVICES,
                                    INC.

                                    By its attorneys,


                                    _____
                                    Richard C. Van Nostrand, Esq.
                                    BBO #507900
                                    Michael D. Badger, Esq.
                                    BBO #633915
                                    Mirick, O'Connell, DeMallie & Lougee, LLP
                                    100 Front Street
                                    Worcester, MA 01608-1477
                                    Phone: (508) 791-8500
                                    Fax:    (508) 791-8502

Dated: March 14, 2005

<u>CERTIFICATE OF SERVICE</u>

    I, Michael D. Badger, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Joseph B. Lichtblau, Esq., Law Office of Joseph B. Lichtblau, 92 State Street, Boston, MA 02109.

_____
Michael D. Badger, Esq.

Dated: March 14, 2005

Form #42

# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.

SUPERIOR COURT DEPT. OF THE TRIAL COURT

CIVIL ACTION

[SEAL]

No. B R C V 2 0 0 4 − 1 3 0 0

_Michael G. Campbell_ , Plaintiff (s)

v.

_Hallsmith − Sysco Food Services Inc._ , Defendant(s)

(TO PLAINTIFF'S ATTORNEY :
PLEASE INDICATE TYPE OF ACTION INVOLVED :—
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.)

### SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon _Joseph B. Lichtblau_

plaintiff's attorney, whose address is _92 State St., Boston, MA 02109_

an answer to the complaint which is herewith served upon you, within (20) days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the office of the Clerk of this
Court at _Bristol Superior_ either before service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim
any claim which you may have against the plaintiff which arises out of the transaction or
occurrence that is the subject matter of the plaintiff's claim or you will thereafter be
barred from making such claim in any other action.

Witness, Hon. Barbara J. Rouse, Adm. Justice of the Superior Court Dept. of the Trial
Court, at Taunton, the _17th_ day of _February_, in the year
of our Lord two thousand and _2005_.

_Mary Sawler, Esq._

_Magistrate_

NOTES.

1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If
    a separate summons is used for each defendant, each should be addressed to the particular defendant.
3.  If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the
complaint, but if you claim to have a defense, either you or your attorney must serve a
copy of your written answer within 20 days as specified herein and also file the original
in the Clerk's Office.

2SC 24

# Commonwealth of Massachusetts
## County of Bristol
### The Superior Court

CIVIL DOCKET# **BRCV2004-01300-C**

RE: **Campbell v Hallsmith-Sysco Food Services, Inc.**

TO: Joseph B Lichtblau, Esquire
92 State Streeet
Boston, MA 02109

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 02/20/2005 |
| Response to the complaint filed (also see MRCP 12) | 04/21/2005 |
| All motions under MRCP 12, 19, and 20 filed | 04/21/2005 |
| All motions under MRCP 15 filed | 04/21/2005 |
| All discovery requests and depositions completed | 09/18/2005 |
| All motions under MRCP 56 served and heard | 10/18/2005 |
| Final pre-trial conference held and firm trial date set | 11/17/2005 |
| Case disposed | 01/16/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session C sitting in **CtRm - Main (Taunton) at Bristol Superior Court.**

Dated: 11/22/2004

Marc J. Santos
Clerk of the Courts

BY: Valerie A. Brodeur / Joseph T. Vincent, Jr.
Assistant Clerk

Location: CtRm - Main (Taunton)
Telephone: (508) 823-6588

Disabled individuals who need handicap accommodations should contact the Administrative Office of the
Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtract_2.wpd 425718 indoc01 aguiarka

| CIVIL ACTION COVER SHEET | DOCK'T ...(S) | Tr  Court of Massachusetts Superior Court Department County: _BRISTOL_ |
|---|---|---|

PLAINTIFF(S) Michael G. Campbell.

DEFENDANT(S) Hallsmith Sysco Food Services, Inc.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Joseph B. Lichtblau, 92 State Street,
Boston, MA 02109 (617) 722-9955

Board of Bar Overseers number: BBO # 555 020

ATTORNEY (if known) Richard C. Van Nostrand
(508) 791- Mirick O'Connell
8500          100 Front Street
              Worcester, MA 01608-1477

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.        TYPE OF ACTION (specify)    TRACK      IS THIS A JURY CASE?

B22      Employment Discrim      (F)      (X) Yes      ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses .................................................... $ To be documente
   2. Total Doctor expenses ...................................................... $
   3. Total chiropractic expenses ............................................... $
   4. Total physical therapy expenses ........................................... $
   5. Total other expenses (describe) ........................................... $
                                                                Subtotal $ .............
B. Documented lost wages and compensation to date ............................... $ To be documente
C. Documented property damages to date .......................................... $
D. Reasonably anticipated future medical and hospital expenses ................... $
E. Reasonably anticipated lost wages ............................................ $
F. Other documented items of damages (describe)
                                                                $ ............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe) distress
   Lost wages, Medical Expenses and severe emotional
   as set forth in the Complaint, causing damage in excess
   of $25,000.                                                  $ ............
                                                                TOTAL $ ............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                                TOTAL $. ............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT
N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 11/14/04

AOTC-6 mtc005-11/99

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

BRISTOL SUPERIOR COURT
C.A. No. _____

MICHAEL G. CAMPBELL,

    Plaintiff,

v.

HALLSMITH-SYSCO FOOD
SERVICES, INC.

    Defendant.

## COMPLAINT AND JURY DEMAND

1.    The Defendant, Hallsmith-Sysco Food Services, Inc. ("Hallsmith-Sysco") is a Delaware corporation, with a principal place of business in Massachusetts on 380 Worcester Street, Norton, Massachusetts (Bristol County).

2.    The plaintiff is a resident of Warwick, Rhode Island.

3.    Plaintiff was hired by Defendant on September 11, 2000, as a third shift dry warehouse worker at Sysco's warehouse, on 380 Worcester Street, Norton, Massachusetts. As a third shift worker, Plaintiff worked overnight, from 7:00 P.M. to 5:00 A.M.

4.    Plaintiff is a gay man. Co-workers at Hallsmith-Sysco either knew that Plaintiff was gay or decided Plaintiff was gay based on his appearance, manner and other factors.

5.    Plaintiff began working for Hallsmith-Sysco on first shift (a day shift), for training purposes, then was assigned to

the third shift after about two-and-a half months. Another worker, Al Jacobs ("Jacobs"), trained with Plaintiff on the day shift then was also assigned to work on the third shift. Jacobs' third shift assignment was in the freezer department and Plaintiff's was in the dry goods department, placing Jacobs and Plaintiff in frequent contact at work.

6.    From approximately the second week Plaintiff began working at Hallsmith-Sysco, while he and Jacobs were still in training on the first shift, Jacobs made derogatory comments, which were  directed at Plaintiff or intentionally made in Plaintiff's presence, about Plaintiff being gay or about gays in general. Jacobs made these comments almost constantly, on nearly a daily basis, through June 13, 2002, the day Plaintiff left Hallsmith-Sysco.

7.    For example, Jacobs would say "Hey faggot, you're going to die," or "You fucking fag, I'm going to kill you," and similar statements to that effect.

8.    On one occasion, Jacobs asked if Plaintiff "liked being fucked" by his "many boyfriends." On another occasion, in or around January 2001, Jacobs asked Plaintiff if Plaintiff had "made rate" yet, and when Plaintiff replied no, Jacobs said it was because "a queer" could not do this type of work.

9.    Jacobs frequently made these and similar derogatory comments when one or more persons, often friends of Jacobs', were

-2-

present. As a result, Plaintiff was subject to ridicule and humiliation and derision.

10. On more than one occasion, Jacobs made derogatory comments about Plaintiff being gay or about gays in general in the presence of or within earshot of Ken Marnard, a supervisor.

11. Jacobs often made these derogatory comments to Plaintiff while standing in intimidating positions, such as standing a few inches from Plaintiff with his index finger near Plaintiff's nose.

12. There were also several occasions on which Jacobs made similar derogatory comments in Sysco's cafeteria, in a loud voice, so that any person, including management and executive personnel, could hear them. For example, on one occasion, while Jacobs and Plaintiff were still on the day shift and Plaintiff was eating lunch in the company cafeteria, Jacobs said in a loud voice "Mike, you have AIDS, right, all faggots have AIDS." On another occasion, Jacobs said (or yelled) in the cafeteria to another worker named Kevin Padgro, "Watch out Kevin, Campbell is going to try to grab your ass and dick."

13. Around March 2001, other third shift workers began making derogatory comments to Plaintiff or in Plaintiff's presence about being gay or about gays in general, on a regular basis.

14. Plaintiff's co-workers sometimes made these derogatory

-3-

comments about Plaintiff being gay or about gays in general in front of supervisors, including Ken Marnard and Art Coriea. On information and belief, Jim Stone, another supervisor, heard or was aware that workers made anti-gay comments on the third shift.

15.     For example, co-worker John Augustine told Plaintiff he would beat up Plaintiff if Plaintiff ever looked at him in a sexual way. On another occasion, in March 2002, John Augustine called Plaintiff "faggot" and "queer," then afterwards, while Augustine and Plaintiff were working in the same aisle, Augustine asked if Plaintiff needed a tampon "because Plaintiff was angry." From about January 2001 to June 13, 2002, John Augustine referred to Plaintiff constantly and on numerous occasions as "you fucking queer."

16.    Co-worker Trevor Ashley made many comments about gays in Plaintiff's presence, including "all gays should be dead." On another occasion, Trevor Ashley threatened to punch Plaintiff in the face, followed by "you fucking fag," or words to that effect.

17.    Co-worker Kevin Padgro, a friend of Jacobs, made numerous jokes about gays. On June 13, 2002, as Kevin Padgro, co-worker Kirby St. Amour and Plaintiff were leaving the building, Kevin Padgro asked Plaintiff in the presence of numerous other co-workers gathered near the exit, including three supervisors -- Ken Marnard, Jim Stone and Art Coriea -- if Plaintiff liked "chin music," explaining this referred to "when a

-4-

guy's balls slap your chin when you're giving head." Kevin
Padgro then said to Plaintiff, "Hey Mike, do you like how it
feels when you put Portuguese sausage up your ass?" The
supervisors present clearly heard these comments, but did
nothing, and in fact left the building. Other workers began
following up on Kevin Padgro's comments and laughing at
Plaintiff.

18. In or about June 2002, Art Coriea and about 5-7 workers
Art Coriea supervises wore bandanas and yelled throughout the
warehouse "We're the P-Town posse," while other workers imitated
effeminate gay men and made jokes about gays.

19. A co-worker known as "Johnny Bravo" called Plaintiff a
stupid fag on at least one occasion.

20. In July 2001, Ken Marnard (Supervisor) told Plaintiff
that Plaintiff was not allowed to talk because Plaintiff was on
light duty, even though there was no such rule. Subsequently,
while Plaintiff was working at the supervisor's station as a desk
clerk, Ken Marnard stood close to Plaintiff and passed gas. When
Plaintiff tried to leave the desk because of the smell, Ken
Marnard physically blocked Plaintiff's exit, then said to others
who were watching, "Oh Cinderella can't handle the smell." Other
workers laughed, while Jim Stone (a supervisor) sprayed a can of
air freshener.

21. Co-worker Al Hebert on various occasions called

-5-

Plaintiff "stupid fag" or names to that effect. Once, Al Hebert
asked if Plaintiff was a "nigger lover" because Plaintiff listens
to Jazz music.

22.  In or about February 2001, a co-worker known as
"Reggie" from the dry department asked if Plaintiff had to be "so
close" to him, while Plaintiff was working with "Reggie."  When
Plaintiff apologized for being in the way, "Reggie" replied that
he "didn't like fags around."  After this occurred, "Reggie"
frequently blocked Plaintiff from getting into aisles or
prevented Plaintiff from passing him, which affected Plaintiff's
"pick" (number of items  picked off shelves) and consequently
Plaintiff's bonus and incentive pay.

23.  Other co-workers referred to Plaintiff in his presence
as "fag" or made derogatory comments about gays, such as for
example, "faggots should be dead," or followed up on Al Jacobs'
derogatory comments about gays or Plaintiff being gay when Jacobs
made such comments.

24.  Plaintiff made Hallsmith-Sysco aware of the hostile
environment Plaintiff encountered on several occasions, as well
as the types of comments directed at Plaintiff or made in
Plaintiff's presence.

25.  On or about July 5, 2001, Plaintiff informed Julia
Gannon, Vice President of Human Resources, that the abusive
comments about Plaintiff's sexual orientation and derogatory

-6-

comments about gays in general had been ongoing since September 2000.  Julia Gannon promised to speak to Plaintiff's supervisors and promised to put up posters concerning discrimination.  Julia Gannon also stated that Plaintiff "could not expect Sysco to change."

26.  No such posters concerning discrimination were thereafter posted in the warehouse area, and the derogatory comments directed at Plaintiff concerning has sexual orientation continued after July 5, 2001.

27.  On or about May 2, 2002, during Plaintiff's vacation, Plaintiff again spoke to Julia Gannon and told Gannon that Plaintiff could not take any more.  Plaintiff informed Gannon that he was passing out, throwing up, had uncontrollable shaking and could not sleep.

28.  On this occasion, Plaintiff gave Julia Gannon a list of names of persons who had made the aforementioned derogatory comments or engaged in the aforementioned conduct, including persons identified in this Complaint, and requested that Gannon speak with the individuals involved.

29.  Subsequently, Plaintiff's treatment at Hallsmith-Sysco worsened.  On or about June 4, 2002, Plaintiff  spoke with Plaintiff's supervisor, Jim Stone, who told Plaintiff that he knew Hallsmith-Sysco was full of bigots but "never thought it bothered anyone."  Jim Stone also admitted he had heard jokes

-7-

about gays.   Plaintiff informed Jim Stone that Plaintiff had
spoken with Julia Gannon.

30.  Jim Stone was present on June 13, 2002, when Plaintiff
was derided and humiliated of as Plaintiff was leaving the
building.  On other occasions, supervisors were present or within
clear earshot when comments were made ridiculing gays.

31.  Plaintiff did not return to Hallsmith-Sysco after June
13, 2002, following the incidents related herein which occurred
on that date.

32.  Plaintiff was constructively discharged from
Hallsmith-Sysco as of June 13, 2002.

33.  On June 14, 2002, Plaintiff's primary care physician
removed Plaintiff from Hallsmith-Sysco on the basis of a
temporary disability related to Plaintiff's knees.  Although
problems with Plaintiff's knees in fact created a temporary
disability, Plaintiff was also unable to return to work on
account of the continuous stress and symptoms caused by the
hostile environment at Hallsmith-Sysco.   Thereafter, Plaintiff
was temporarily, totally disabled from returning to work on
account of post-traumatic stress disorder.

34.  Throughout Plaintiff's employment at Hallsmith-Sysco,
Plaintiff experienced increasingly worsening symptoms, which
Plaintiff had not previously experienced, including blacking out,
throwing up, sleeplessness, uncontrollable shaking, racing

-8-

thoughts, severe headaches, severe anxiety and panic, and
depression. On many occasions at Hallsmith-Sysco, Plaintiff felt
humiliated, ostracized, belittled, embarrassed and intimidated on
account of comments and conduct directed at Plaintiff because
Plaintiff is gay or was because Plaintiff was perceive to be gay.

35.   Plaintiff continued to experience many of these
symptoms subsequent to his last day of work at Hallsmith-Sysco.

36.   The continuous derogatory comments and conduct referred
to in this Complaint unreasonably interfered with Plaintiff's
work performance at Hallsmith-Sysco.

37.   Hallsmith-Sysco knew or should have known of the
aforementioned hostile environment, discrimination on account of
sexual orientation, and sexual harassment, and did not take
adequate measures to prevent these unlawful practices or
ameliorate the effect of these practices on Plaintiff.

## COUNTS

### COUNT I

(G.L. c. 151B, Sec.4/Hostile Environment/Sexual Harassment)

38.   Plaintiff repeats and reallges paragraphs 1 through 37
as if more fully stated herein.

39.   The defendant was plaintiff's employer.

40.   Plaintiff's co-workers and supervisors in the employ of
the defendant treated plaintiff differently from similarly

situated, heterosexual co-workers.

41.   Plaintiff's co-workers and supervisors in the employ of the defendant subjected Plaintiff to a hostile environment by making derogatory comments and engaging in conduct designed to humiliate Plaintiff on in the workplace on account of plaintiff's actual or perceived sexual orientation.  Said comments and conduct were pervasive and continuous and were perceived by Plaintiff as hostile.

42.  Plaintiff's supervisors and co-workers in the employ of the defendant made derogatory comments of a sexual nature to plaintiff, which comments had the purpose or effect of unreasonably interfering with plaintiff's work environment by creating an intimidating, hostile, humiliating or sexually offensive work environment, and additionally constituted sexual harassment under G.L. c. 151B, §1(18) and G.L. c. 151B, §4, ¶16A.

43.   The defendant knew or should have known that Plaintiff was subject to differential treatment, a hostile environment, and sexual harassment, all as aforementioned, and took no action, or ineffective action to prevent the plaintiff's continued exposure to said treatment, hostile environment or sexual harassment, and thereby allowed or permitted the plaintiff to be exposed to said differential treatment, hostile work environment and sexual harassment in the workplace in violation of G.L. c. 151B, §4.

44.   The plaintiff's exposure to differential treatment,

-10-

hostile work environment and sexual harassment continued after the defendant knew or should have known of the differential treatment, hostile work environment and sexual harassment.

45. Defendant constructively terminated plaintiff on the basis of his sexual orientation, in violation of G.L. c. 151B, §4(1) and (1B).

46. The defendant committed the practices complained of with knowledge or reason to know that said practices violated G.L. c. 151B, §4.

47. As a result of the aforementioned conduct of defendant, plaintiff suffered and continues to suffer harm, including lost wages and benefits, medical expenses, humiliation, mental anguish and embarrassment, emotional distress.

48. As a result of the aforementioned conduct of defendant, plaintiff suffered constructive termination from employment, and subsequent loss of wages.

### COUNT II

(Reckless/Intentional Infliction of Emotional Distress)

49. Plaintiff repeats and reallges paragraphs 1 through 48 as if more fully stated herein.

50. The defendant intentionally or recklessly terminated plaintiff based upon his actual or perceived sexual orientation.

51. The defendant recklessly or intentionally inflicted emotional distress or the defendant or knew or should have known

that emotional distress was likely to result from its conduct.

52.   The defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.

53.   The defendant's conduct caused plaintiff severe emotional distress, mental anguish, humiliation and embarrassment of a nature that no reasonable person could be expected to endure.

#### PRAYERS

WHEREFORE, plaintiff prays this Court:

A.   Enter judgment for the plaintiff against the defendant;

B.   Award the plaintiff compensatory money damages against the defendant in an amount to be determined by this Court, including back pay, front pay, damages in lieu of benefits and other damages;

C.   Award the plaintiff punitive damages against the defendant for discrimination in all forms pursuant to G.L. c. 151B, Sec. 9;

D.   Award the plaintiff attorney's fees, costs and expenses of suit, as against the defendant, pursuant to G.L. c. 151B, Sec. 9;

E.   Enter such other relief as this Court determines is equitable and proper.

#### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE

MICHAEL G. CAMPBELL,

By his attorney,

Joseph B. Lichtblau
BBO # 555020
92 State Street
Boston, MA 02109
(617) 722-9955

JS 44
Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## (a) PLAINTIFFS

Michael G. Campbell

## DEFENDANTS

Hallsmith-Sysco Food Services, Inc.

FILED

2005 MAR 1      2

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Kent, RI
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Bristol, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Joseph B. Lichtblau, Esq.
Law Offices of Joseph B. Lichtblau
92 State Street
Boston, MA 02109    Tel. 617-722-9955

ATTORNEYS (IF KNOWN)

Michael D. Badger, Esq.
Richard Van Nostrand, Esq.
Mirick O'Connell    Tel. 508-791-8500
100 Front Street, Worcester, MA 01608

## BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

□ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)    AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business In This State | □ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | □ 2 | Incorporated and Principal Place of Business In Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

□ 1 Original
Proceeding

☒ 2 Removed from
State Court

□ 3 Remanded from
Appellate Court

□ 4 Reinstated or
Reopened

□ 5 Transferred from
another district
(specify)

□ 6 Multidistrict
Litigation

□ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| □ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | □ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 362 Personal Injury Med Malpractice | □ 620 Other Food & Drug | | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | □ 365 Personal Injury Product Liability | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 423 Withdrawal 28 USC 157 | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 368 Asbestos Personal Injury Product Liability | □ 630 Liquor Laws | | □ 450 Commerce/ICC Rates/etc |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | | | □ 640 R.R. & Truck | **PROPERTY RIGHTS** | □ 460 Deportation |
| □ 151 Medicare Act | □ 330 Federal Employers Liability | | □ 650 Airline Regs | □ 820 Copyrights | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | □ 340 Marine | **PERSONAL PROPERTY** | □ 660 Occupational Safety/Health | □ 830 Patent | □ 810 Selective Service |
| | □ 345 Marine Product Liability | □ 370 Other Fraud | □ 690 Other | □ 840 Trademark | □ 850 Securities/Commodities/ Exchange |
| □ 153 Recovery of Overpayment of Veteran's Benefits | □ 350 Motor Vehicle | □ 371 Truth in Lending | | | □ 875 Customer Challenge 12 USC 3410 |
| □ 160 Stockholders' Suits | □ 355 Motor Vehicle Product Liability | □ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | □ 891 Agricultural Acts |
| □ 190 Other Contract | □ 360 Other Personal Injury | □ 385 Property Damage Product Liability | □ 710 Fair Labor Standards Act | □ 861 HIA (1395ff) | □ 892 Economic Stabilization Act |
| □ 195 Contract Product Liability | | | □ 720 Labor/Mgmt. Relations | □ 862 Black Lung (923) | □ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | □ 863 DIWC/DIWW (405(g)) | □ 894 Energy Allocation Act |
| □ 210 Land Condemnation | □ 441 Voting | □ 510 Motions to Vacate Sentence | □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 864 SSID Title XVI | □ 895 Freedom of Information Act |
| □ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus** | □ 740 Railway Labor Act | □ 865 RSI (405(g)) | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/ Accommodations | □ 530 General | □ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | □ 950 Constitutionality of State Statutes |
| □ 240 Torts to Land | □ 444 Welfare | □ 535 Death Penalty | | □ 870 Taxes (U.S. Plaintiff or Defendant) | □ 890 Other Statutory Actions |
| □ 245 Tort Product Liability | □ 440 Other Civil Rights | □ 540 Mandamus & Other | □ 791 Empl. Ret. Inc. Security Act | □ 871 IRS — Third Party 26 USC 7609 | |
| □ 290 All Other Real Property | | □ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 1332.  Removal of Massachusetts state anti-discrimination and infliction of emotional distress claims.

## VII. REQUESTED IN    CHECK IF THIS IS A CLASS ACTION    DEMAND $
COMPLAINT:    □ UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ YES    □ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____    DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)__Campbell v. Hallsmith-Sysco
    _Food Services, Inc._

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LIST
    ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1))

    ___         I.      160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT
    _X_         II.     195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720,730,
                        740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.
    ___         III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                        380, 385, 450, 891.
    ___         IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                        690, 810, 861-865, 870, 871, 875, 900.
    ___         V.      150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E))
    _None_

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN
    FILED IN THIS COURT?  _No_

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS
    AFFECTING THE PUBLIC INTEREST?  _No_
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?  (SEE 28 USC 2403)
    ___

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES
    PURSUANT TO TITLE 28 USC 2284?  _No_

7.  DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF
    MASSACHUSETTS (WORCESTER COUNTY)? (SEE LOCAL RULE 40.1(C)) YES ____ OR IN THE WESTERN
    SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? (SEE LOCAL RULE 40.1(D))
    YES ____

8.  DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN
    SECTIONS OF THE DISTRICT?  YES _____
    (a)     IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9.  IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?  _Eastern_

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY
    GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE
    IN THE CENTRAL SECTION_____OR WESTERN SECTION_____

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME__Michael D. Badger, Esq.  Richard Van Nostrand, Esq._
ADDRESS _Mirick O'Connell, 100 Front Street, Worcester, MA 01608_
TELEPHONE NO.__508-791-8500_

(COVER-SHT-08/90)